Good morning. May it please the court. My name is Brandi Galler and I'll be arguing this morning on behalf of the United States. When the district court considered Mr. Pickett's second 2255 motion, the law about the appropriate threshold burden for bringing such a claim was unsettled. The district judge did not have the benefit of Beeman, so why shouldn't we simply vacate this case, send it back to the district court, say, in the first instance, look at Beeman and see if it changes what you did. End of the case. Brandi Galler Yes. Your Honor, there are cases where this is a remanding to the district court. Judge Goldberg Why shouldn't we do that in this case? Brandi Galler In this case, doing so would not make any sense, our position is, is because it basically would be a pointless exercise because in this case, it's very clear and Appellee concedes that the sentencing record is silent as to which clause was used by the district court. Judge Goldberg I don't disagree with you on that. He does say that, but why, in fairness to Mr. Pickett, should we at least not give him an opportunity to present whatever he wants to present? You might have another appeal another day, but I kind of doubt it. Brandi Galler Well, so once we know that the sentencing record is silent, we're entitled to relief so that he could meet his burden, is by proving by historical fact under Beeman. Judge Goldberg That doesn't help you any, does it? Brandi Galler It does not help Mr. Beeman, or Mr. . . . Judge Goldberg It doesn't help us figure out what was in Judge Middlebrook's mind, does it? Brandi Galler I believe that it does, Your Honor, because there is clear case law on point from the Eleventh Circuit that is binding precedent in United States v. Glover that this offense, that one of his offenses . . . Judge Goldberg So you're talking about looking to case law that may provide circumstantial evidence or indicia of what must have been in his mind at the time. But I'm asking a slightly different question. Maybe it's just semantics. By historical fact, what we would look to is the record. I mean, to begin with, there's nothing in the record or in the . . . anything he said, there's nothing in the PSI that sheds any light on this. Brandi Galler That's correct. Judge Goldberg He had no reason to really say because it obviously fell within the ambit of what was understood under the last clause. So there's just nothing there. So the question is, is there a case law out there that powerfully and clearly indicates that he must have been relying not just on the residual clause but on the elements clause as well? Brandi Galler Yes. Judge Goldberg Tell me what case would have informed that determination so that we could circumstantially infer something about his state of mind when he told us nothing about his state of mind. Brandi Galler It's United States v. Glover, Your Honor. The site is 431 F. 3rd 744 and it's an 11th Circuit case that is published from 2005. And what that case does is lays out what the elements clause is and then lays out what the elements of Florida battery against a law enforcement . . . well, in this Florida battery and then makes the statement, because battery on a law enforcement officer is a crime of violence under the guidelines, the district court did not err when it enhanced Glover's sentence. So what that case did . . . Judge Goldberg When I read Glover, it sure looked like dicta to me. It didn't look like a holding to me. I will concede that there are subsequent cases that say it was holding, but if I were coming at it, just speaking for myself, it looked like dicta. But even if we said it was holding, didn't we say it was holding after, beyond the point where it could possibly have affected the district court? Judge Galler Yes, Your Honor. The case . . . Judge Goldberg So if all he had was Glover, why wouldn't he have read it the way I did and concluded that was dicta if he read it at all and concluded he wasn't bound by it? Judge Galler All of the cases that discuss Glover maintain that . . . expect that the ruling on this point that we're talking about was a holding. There's no case anywhere that I'm aware of that suggests that that was dicta. Judge Goldberg So you can see how someone might look at that and say it looked like it wasn't necessary to the holding in the case? Judge Galler I can see that that is the argument of my opponent in this case, but I don't think that any judge at the time, reading Glover, searching for a determination of whether the predicate offenses that he was looking at would qualify as enhancements under the ACCA, I don't think any judge at the time would have read that and been concerned that that was dicta. Because what is happening there is that, yes, the primary argument in that case was whether or not the offense should have been determined by a judge or by a jury, but once the court made that determination that it was a question of fact, I don't think it was dicta for the court to then take that if we're going to answer that question of law, it is a crime of violence in this case. So to answer your question, I don't think that Judge Middlebrooks or any other district court judge reading it at the time would have believed that that was dicta. I think that they would have believed that to be the intent of the Eleventh Circuit and would have followed that. Any other cases that you can rely on that suggest that he must have been relying on the Elements Clause as well as the Residual Clause? That is our primary case from the time, Your Honor. So if we come away with the sense that we're just not sure what was operating in the mind of the district court because he had no reason to, given the state of the law at that time, to say anything more than he did say, why ought we not just send it back to the district judge and give him an opportunity to meet his burden under Beeman? It's a tough burden. But you have the same district judge, so he's in a position to tell us what he had in mind. It would require... Maybe. I don't know. Maybe he's in a position to do that. It would require him, Your Honor, to basically say that he was not following binding Eleventh Circuit precedent at the time. I think that we can assume that where the record is silent that we can assume that our district court judges are applying... This whole issue turns on, the strength of your argument turns on, whether or not one might come away with the sense that the proposition that you're asserting in Glover was dicta as opposed to holding or holding as opposed to dicta. That's the whole issue. Well, it's certainly a big part of the issue, Your Honor. However, I don't think that it is the entire issue because this burden is on the movement to show that he was not sentenced, that he was... He needs to establish that the residual clause was solely responsible for his sentence. No question. That's his burden. More likely than not. He's got to show by a preponderance of the evidence that the district court decided this case based solely on the residual clause, that he didn't do it for joint reasons, alternate holdings, he didn't look at the elements clause, etc. It was only the residual clause. There's no question about what his burden is. I'm just hard-pressed to understand why we ought not to give the district court the first crack at deciding that question if it isn't a slam dunk at this stage in the proceedings. What compounds that, I'm just speaking for myself, he's already been released. He wanted us to direct that he be remanded to the custody of the Bureau of Prisons. You might be right, but why shouldn't he be given the opportunity to show the district judge, or at least to argue before the same district judge who passed sentence on Round 1, granted the 2255 on Round 2, and now has to decide what Piemann does to the case on Round 3? Because he is not able to point to any specific case that shows that his prior conviction was, would have been necessarily based upon only the residual clause. I see that my time has expired. Thank you very much. And you have reserved, Ms. Gallo, seven minutes for your rebuttal. You've got the full time. Thank you. May it please the court. Andrew Adler from the Federal Defender's Office on behalf of Albert Pickett. Your Honor, the record in this case is actually not silent. Footnote 11 of the district court's order in this case says that the judge recognized that Mr. Pickett had little reason to object to the enhancement because of the residual clause. He is expressing his understanding that at sentencing, the residual clause clearly supported the enhancement and that was the reason why there was no objection. We think that, and of course, as Your Honor's point out, it's the same judge who presided over the sentencing ten years earlier. Regretfully, we overlooked the import of that comment when preparing for the briefs, but we have emphasized it in our response to the government's 28-J letter. And of course, it's part of the record the court can affirm on any ground. And of course, it's not only in the record, it's part of the order under review here. And we think that explicit comment obviates the need for the court to even consider the legal landscape. It's not circumstantial. It's direct evidence of what was in the judge's mind ten years earlier. At the very least, even if the court is not sold on what he meant by that comment, it is a compelling reason for remand. We don't understand any reason why the government would oppose a remand in this case, particularly in light of that comment and particularly given that this court has, in at least eight cases, remanded where Beeman… But your position is we need not remand it at all to the district court to make such a determination under Beeman that it's clear from this record. That is our… You met your burden under Beeman and therefore we would simply deny the government's application. Your Honor, that's our primary position that the court would affirm. If the court is not sold on the meaning of this comment in footnote 11, then the only appropriate course would be to remand so that we could go back before Judge Middlebrooks and find out what he meant by this comment, what he remembers about the sentencing, just as this court has done in eight other cases where Beeman post-stated the ruling below. We cited two… Did we ever publish anything where we've done that? I know we've done it a whole bunch of times. I've been on more than one panel where we did remand and said to the judge, tell us what you meant. You were there, we weren't. Your Honor, no. This court has not published any rulings at all applying this court's decision to Beeman. They're all unpublished, but there's still eight of them and we don't understand why Mr. Pickett should be treated worse than any of those movements, particularly given that the record in all of those cases was silent. Here we have an express comment from the judge about what was in his mind ten years earlier. We think that that comment, that explicit comment is more than enough to show, more likely than not, that the residual clause alone was the basis of the enhancement. And just for the court's review, two of the cases were cited in… Let me just ask you a follow-up question. If this court were to come away with the conclusion that it simply cannot tell what the district court had in mind, because at the time the district court said a lot and didn't say much, I'm not faulting it because I don't think he had much reason to do more than that he did, but now the landscape has changed and we send it back and we say, you decide whether or not the petitioner's met his burden under Beeman. What would the nature of that proceeding before the district court look like as you see it? Would you simply cite to what's out there now or would you come back and anticipate saying to the district judge, I want to put on some other evidence, judge, not just cite to legal authority but some competent evidence dealing with historical fact? And if the answer is yes, what is it that you would be fixing to do? In footnote four of Beeman, the court recognized that there's all sorts of ways that a movement can satisfy his burden. In this particular case, the primary thing that we would like to do is to inquire of the sentencing judge what was in his mind. Historically, as a… Were you going to interrogate the judge? I wouldn't call it interrogation, Your Honor. I would simply… What would you call it? What's the difference? I believe it's just an inquiry to the judge. He made this comment in footnote 11. We would like to know what he meant by that. He's free to tell us what he… Well, our remand order would tell him. We don't know what was in your mind. You tell us. Right. So that alone would be sufficient for that. There's other evidence that we might seek to discover. We pointed out in footnote four of our brief. It's possible there were probation training officer manuals at the time that specified which clause. And if there was no direct evidence of which clause was being relied upon… And had a training manual that answered the question and whether they shared it with the judge and whether the judge used it to decide? It's just one possible example, but I think the primary route would be through the district judge himself. And I'd point out that another judge in this district judge site has gone out of her way to write orders specifying that this was her default practice in 2005, in 2006. Because the residual clause was so broad… We certainly don't need a training manual for that. Oh, no. Of course not. That's only if the judge himself could not recall what his practice was or what happened at this particular sentencing. And we believe it's quite easy for Judge Miller Brooks to do that. And I don't think we would have to interrogate him. I think he could just tell us. So if, on the other hand… I'm quite sure he will. I agree, Your Honor. And we believe he actually already has in this footnote. He wasn't directly applying Beeman, but we believe that is the only way to read this comment in footnote 11. Tell us again exactly what he says in that comment. Sure, Your Honor. This comment, just to provide some context, he is addressing whether the Florida Battery convictions qualify under the Elements Clause. And he drops a footnote and he says, by the way, I'm not… The only reason I even know which statutes are at issue here is because the government provided the judgments in this second 2255 proceeding. But then he says, well, I don't fault the government for not providing these Shepard documents in the sentencing because Mr. Pickett didn't object. Then he says, and I recognize that Mr. Pickett had little reason to object because of the residual clause. He doesn't say because of the residual clause and the Elements Clause or because of the Elements Clause. He says because of the residual clause. And we believe the only way to… He doesn't rely on another clause, even though he didn't specifically say that, does he? It doesn't absolutely preclude that possibility, but all we have to show is more likely than not under Beeman. And we believe that that comment is as good as him saying in sentencing, I'm relying on the residual clause to uphold the enhancement. He's just doing it 10 years after the fact and he's expressing what his understanding was at that time. So we believe it's a very powerful comment. It's compelling direct evidence of what was in his mind. And that's what separates this case… I suppose if that's so and we send it back, he'll tell us. Agree, Your Honor. We're not opposed to a remand. We just are trying to make the point we believe it's a very powerful comment that provides the basis for affirmance on its own. If the court doesn't agree, of course, we believe a remand would be the appropriate course and we will ask him and find out for sure. But I'm just trying to point out that under Beeman, we don't have this reasonable doubt burden. We don't have to prove anything conclusively. It's a 51% more likely than not standard of proof. Tell me about Glover. Yes, Your Honor. He says it's self-evidently holding. You say it's dicta. We agree with… Tell me what was necessary to the holding in the case. Your guess is as good as mine, Your Honor. We don't believe that anything in that one unexplained sentence that the government is relying upon is dicta. And it's for two reasons. Not just the reason we point out in our brief, but there's a second reason, which is the court goes on in that case to vacate the sentence on statutory Booker grounds on entirely different grounds. So the whole… The statement itself was Bollea is, quote, a crime of violence. Yes. That's it. Correct. That's the statement. But the defendant in that case did not dispute that as a matter of law, that Florida battery conviction was a crime of violence. That was not his argument. His only argument was that it was a jury, not a judge, that should have made that factual determination. And this court said, no, that's wrong for two reasons. One, it's not a factual determination. It's a legal determination. And second, it's part of the apprendee exception for prior convictions. So the court rejected that argument. And then it included a gratuitous paragraph in which it makes this unexplained comment about it being a crime of violence, something that the defendant does not dispute. Then in an entire next section of the opinion, the court vacates the sentence because the And so there would have been no reason to even address this whole section of the opinion that we're talking about on constitutional booker error because it made no difference to the outcome of the opinion. As this court has said time and time again, discussion in an opinion that's not necessary to the resolution of the case is dicta. Now, we acknowledge that this court subsequently, after Mr. Pickett's sentencing, treated that comment as a holding. But we don't believe that a judge looking at that without the benefit That would be a problem if those determinations predated. Correct. That would be a decision. Correct. By Judge Middlebrooks. I take it as clear that each of them postdated. Yes, that is clear. The sentencing in this case was February 2nd. The first case to treat the Glover statement as dicta was, I believe, Janos Agostadero, which was also in 2007, but later, I believe several months later. There was nothing before the sentencing in this case that treated that in passing, unexplained comment as a holding. And we believe that any district judge looking at it would not treat it as such. And again, that's for two reasons. It's dicta for two separate reasons. And we really don't need to speculate about that or about what the legal landscape would have shown to a hypothetical, reasonable sentencing judge at the time, because we have this comment from this particular judge in this particular case. So the legal landscape, as Your Honor pointed out, is a circumstantial basis to find out what a judge might have been thinking at the time. But we don't need to resort to that here in light of the explicit comment. The only other thing I'd point out about the landscape is this court's decision in Rozier, which was in 2002, and it expressly held that Florida battery on a law enforcement officer satisfied the residual clause and did not satisfy the elements clause. Now, that was an unpublished decision for sure, but we believe that it illustrates exactly how courts were analyzing this issue at the time. And it was obvious to this court in 2002, just as it was to Judge Miller Brooks five years later, that these Florida battery convictions clearly satisfied the residual clause. This court had a developed body of law predating the sentencing in this case, where it was holding that all sorts of nonviolent offenses satisfied the residual clause. Of course, Rozier was an unpublished opinion. Yes, it was. I don't have any – see, the real problem, candidly, just speaking for myself that I have here, is that it just wasn't much reason for the trial courts to spend much time worrying about whether it was the elements clause or the residual clause when it so obviously fell within one, and maybe it fell in the other, and maybe it didn't. And nobody really was making a big deal about it at the time. So there's just nothing there that's just very helpful in discerning what he had in mind. Now it's a big deal, but it wasn't then. We agree, Your Honor, and that's why most of these cases are silent record cases, because there was no reason for the judge to articulate a basis. And that is the reason why this court has denied relief under Beeman in so many cases. But in this case, we don't believe it's a purely silent record case, and of course, Beeman postdated the ruling here. Let me ask you a slightly different question. I'm curious, how many other cases, to the extent you might know as a public defender, are sort of kicking around out there in this odd procedural posture? In pre-Beeman, but Beeman gets decided, appeal is going forward. Is this like, are we almost done with them, or are there still some floating around out there? Your Honor, I don't know for sure. I believe this court has resolved a lot of cases under Beeman. I can't imagine there's too many more floating around, especially ones that predate Beeman. Of course, the reason why this case predates Beeman is because the appeal in this case has been delayed. The government sought multiple extensions before filing its appeal. We're not faulting the government for that. We're just explaining why this case is still going on, even though the ruling predated Beeman. I can't imagine there's too many more of those kicking around out there. But on the other hand, this court just decided one this Monday in the Carmichael case that also predated, where the district court's ruling predated Beeman. So there may be a few more out there, but Your Honor, we just don't see any need to . . . if Your Honor's question is designed to figure out whether to publish a decision in this case . . . Indeed it is. We don't believe that's necessary if the court's resolution is just a remand, because the court's done so in eight more cases. We don't think there's that many more to follow in that same posture, and there's no real law that is being established by doing that. If the court was record and or the legal landscape, then that may very well provide useful guidance. We think that in a future case where the record is silent and the only issue is the legal landscape and there's no possibility of a remand, then that would be the case . . . the appropriate case to maybe publish a decision and provide guidance on how to analyze the legal landscape arguments under Beeman. We just don't think this is that case. Thanks very much. Thank you. I have two questions that I would appreciate you addressing in the course of your rebuttal in any order you want, but tell me what you think of the comment that Judge Middlebrooks made in footnote 11 and what inference, if any, one might reasonably draw whether that's enough to take him over the line. He only needs 51-49 to establish a preponderance. And two, I want you to tell me more particularly why you think it was so clear that this comment in Glover was more than dicta, given the issues that they were grappling with. Yes, Your Honor. I'll take them in that order. First, as far as the footnote comment, our position is that we feel very strongly that that is by far not enough. What the judge is saying there is about the residual clause, and there's no question the judge may have relied on the residual clause. What he needs to prove in order to meet his threshold burden, however, is that he relied on the residual clause to the exclusion of any other clause. And this comment makes absolutely no reference to excluding reliance upon the elements clause and relying solely on the residual clause. So, although the comment does discuss the residual clause, it certainly does not go so far as to say that it was sole reliance on the residual clause. Well, his argument is it's suggestive of what was on his mind was residual, not elements. The only thing he talked about was something that could only relate to the residual clause. But it is, he... If he didn't choose to say anything about the elements clause and chose to say something about the residual clause, we ought to be able to infer that that was the basis upon which he decided the case. That's the argument. I think that that is a logical... ...reference, but he suggests it's good enough for government work. It is a leap, Your Honor, to take...to go from having...recognizing the importance of the elements clause...I'm sorry, of the residual clause and realizing that given how broad the residual clause was, the defendant may...remember what he's talking about there in that footnote is making a point about why it might not have been worthwhile to him to challenge the factual underpinnings in his PSI for his prior convictions. That's the context that that comment is coming in under. So there would not be any reason for the district court there to also bring up the elements clause at that point. What did the PSI say about the enhancement? Did it specify the residual clause or the elements clause? No, Your Honor. There's no discussion whatsoever as to which clauses are being relied upon. Just that there were four prior convictions and making reference to each of those four prior convictions. To take Your Honor's...or to take Judge Marcus' second question as far as Glover and whether what was said in Glover should be viewed as dicta. My response to that, Your Honor, is that when this court writes opinions and chooses to publish them, they are binding law and we don't need to wait for a subsequent decision to come down the road to tell us whether or not the information in those other prior opinions is dicta or not. That's certainly true if it was Holden. Yes. And in this case... The reason I raised the question is I understood the case. The defendant argued that the sentencing court made a constitutional error because it violated Booker, right? Wasn't that the heart of what they said? And a Booker violation occurs when a sentence is increased because of an enhancement of fact that was neither admitted by the defendant nor found by the jury. That was what they were talking about. And Glover argued that the court had found that his offense constitutes a crime of violence, but we explained two reasons why that wasn't the case. We said one, Booker left wholly undisturbed the prior conviction's exception to the rule that a jury must find facts that enhance the sentence. And two, whether a previous conviction is a crime of violence is a question of law, not a question of fact, because it requires the interpretation of the guidelines. I understood those to be the bases for the Holden in the case. And then you get, as he points out, another paragraph that struck me as wholly unnecessary that the determination in which the panel said, and I quote, because Bolea is a crime of violence, under the guidelines, the district court didn't err. But I didn't read that to be answering the question quite the way you suggest it is. What am I missing? Well I think, Your Honor, two things. I think first, at the time, I tried to say this before but maybe I didn't articulate it clearly. I'll make another attempt. But at the time when district courts would have been looking at this opinion to determine how the 11th Circuit felt about Bolea, they would have come across this opinion and had every reason to believe that the 11th Circuit, in a published binding opinion, was under the impression and wanted lower courts to rule that Bolea was a crime of violence, or in this case, a violent felony. Second, I think the argument of Glover was, broadly speaking, one where he was challenging the legality of using his prior conviction as a crime of violence. So he attacked it, we all can agree, on the avenue of whether it was a violation of Booker or Apprendi. But broadly speaking, what he was arguing, which the only thing that would matter or not, his offense was going to count. And so when this court went ahead and weighed in and said, yes, the offense, in any event, does count. To the extent the court held, Booker left undisturbed the prior conviction's exception to the rule that a jury must find the facts that enhance the sentence, that has nothing to do with the proposition being urged now, does it? It's not necessary to that statement, that rationale, that they added this additional observation, is it? You're asking whether, to clarify, are you, you're asking... I'm asking whether the comment in this last paragraph that we're talking about, that one sentence, was necessary to a holding that Booker left undisturbed the prior conviction's exception to the rule that a jury must find facts that enhance the sentence. Didn't seem to me to have anything to do with that holding. Well, it may not, even though it may not be necessary to the holding... Necessary, but that's all I was asking. Is that necessary to that holding? I think the answer has to be no. It may not be. However, when you're looking at the defendant having broadly attacked or challenged his sentence, I don't think it was unexpected for the court to finish answering the underlying question there, which is, of course, is this, what, this is a question of law, but what's the answer under the law? And that's what it then went ahead and did. Yes, but what the answer is was not necessary to the characterization of the matter as being a question of law. Not the way that Glover presented the argument. Is it necessary to the alternative holding, which simply says whether prior conviction is a crime of violence is strictly a legal question and not a fact question? I don't believe it is, Your Honor. It's not necessary to that holding. Okay, so to the extent that the court went off on both of those grounds that I just enumerated, and to the extent it was not necessary to either of those holdings, why wouldn't it have been fair to characterize this comment as dicta? It's interesting. It flows naturally from these other observations, but strictly speaking, they didn't have to say that in order to reach the conclusion they reached in the way they reached it, did they? That's the problem that I'm having. You might be right, and another court read it as holding, but it struck me reading it that I might really come away with a sense that that wasn't really necessary. I think where we are is years later, now looking at this in a different context, we can pick it apart in the way that we've done here and say, well, oh, it's obviously should have been dicta, should have been obvious to courts, to district courts that it was dicta, but it wasn't, Your Honor. And we know that because it was plain as day to the 11th Circuit in all of those follow-up opinions from the 11th Circuit that very clearly stated, as we held in Glover, they say that in Llanos and Castino, they say it in Hernandez, in Young, in Johnson, and all four of those cases are already in 2008. So it wasn't even that much time that had passed. It was as the case law was evolving on battery offenses and how they were going to be viewed as predicate offenses, the law was evolving and it was a struggle of courts trying to figure out how they're categorizing them. And it was clear to the 11th Circuit shortly thereafter that this was a holding. Let me ask you a slightly different question. We've gone over the time, but I just am curious, how many, I asked Mr. Adler the same question. Do you know whether there are a whole bunch of these cases still kicking around? Because we've remanded a whole bunch of them because we just weren't sure. I believe, Your Honor, that there's a total of eight now that have been remanded. I believe there are more than 20 that this Court has already gone ahead and just decided. Right. But how many others is what I'm asking? Other than the 20 we've decided and the eight we've remanded, are there still other cases out there that will be coming before panels of this Court? The indication that I have, Your Honor, is that there are some, but that there are not a lot. We are probably toward the tail end of this. Thanks very much. Thank you both for your efforts. If I may? Yeah, sure. Just one final point, Your Honor. Of course. As far as when we're trying to get into the head of the District Court and what the District Court did at the time of sentencing, one final point that I would invite the Court to consider is that in the resolution of Mr. Johnson's first 2255, he clearly found that the bolio offense qualified under both the residual clause and the elements clause. Now, that was after, certainly, Curtis Johnson, and it was not at the time of his sentencing. I know that that's the real focus. But I think on remand, if we were to ask the Court, the Court would have an indication, not only of saying that it wasn't following Glover, which was binding precedent at the time, but also that it did not rely on the elements clause at the time of sentencing at all, but then it did rely on the elements clause three years later in resolving his first 2255. Thanks very much. Thank you. We'll proceed with the next case, George Amador.